IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


CHRISTOPHER DANIEL GAY,     )
     )
    Petitioner,     )
     )   NO. 3:19-cv-00610
v.     )
     )   JUDGE RICHARDSON
STATE OF TENNESSEE, et al.,     )
     )
    Respondents.     )


## MEMORANDUM OPINION

### I. INTRODUCTION

Before the Court is a pro se petition under 28 U.S.C. § 2254 (Doc. No. 1), filed by

Christopher Daniel Gay, an inmate in the custody of the Southwest Virginia Regional Jail in

Meadowview, Virginia.

According to the petition, on March 1, 2018, Petitioner was convicted in Sumner County

Circuit Court upon his plea of guilty to domestic aggravated assault and was sentenced to 8 years'

probation in the community corrections program. (Doc. No. 1 at 1.) He is currently detained in

Virginia on multiple state charges.[1]

After being directed to respond to the petition, Respondent filed a certified copy of the state

court record (Doc. Nos. 13, 13-1) and a motion to dismiss on grounds of untimeliness. (Doc. No.

14.) Petitioner has filed a response to the motion to dismiss. (Doc. No. 16.) Having carefully

---

[1]    *See Gay v. Shuler*, No. 7:19CV00439, 2019 WL 3801844, at \*1 (W.D. Va. Aug. 13, 2019) ("Records available online indicate that Gay has several serious criminal charges pending against him in state court, including eluding police, three counts of attempted capital murder of a law enforcement officer, and possession of a firearm and ammunition as a convicted felon.").

considered these pleadings and the record, it appears that an evidentiary hearing is not needed in this matter. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8, Rules Gov'g § 2254 Cases.

## II. BACKGROUND

Petitioner was arrested on October 5, 2017 and subsequently indicted in Sumner County on the charge of domestic aggravated assault, a class C felony under Tenn. Code Ann. § 39-13-102. (Doc. No. 13-1 at 39.) This charge rested on evidence that Petitioner had held a knife to the throat of his girlfriend, Tarie Lynn Bennett, whom he believed to be cheating on him. (*Id.* at 2 (indictment), 5 (criminal complaint).) After the State filed notice of its intent to seek enhanced punishment under the career offender statute (*id.* at 32–36), Petitioner entered a plea of guilty on March 1, 2018. He was sentenced to eight years in prison at 35 percent, suspended to time served between October 5, 2017 and March 1, 2018, with the remaining sentence to be served on Community Corrections. (*Id.* at 39–47.) This probationary sentence is set to expire on October 5, 2025. (*Id.* at 46.) Petitioner did not attempt to appeal his conviction or sentence, nor did he file any petition for post-conviction relief or other collateral attack on the judgment entered pursuant to his guilty plea.

On November 16, 2018, a Sumner County arrest warrant was issued for Petitioner on the charge that he violated his probation in light of his being formally charged with multiple crimes in Rutherford County, Tennessee. (*Id.* at 58–59.) It does not appear that this warrant was ever executed. (*Id.* at 59, 62.) Petitioner has been incarcerated in Virginia since January 2019 and, on

May 13, 2019, filed a motion in Sumner County court to have the Community Corrections violation warrant served on him in Virginia, "so he can work toward being reinstated." (*Id.* at 68.)

On May 20, 2019, Petitioner wrote a letter to his trial judge in Sumner County, reporting that he was not guilty but "pled out in order to get out of jail before [he] lost everything," and that the victim, Ms. Bennett, recently admitted that she "thought [he] was having an affair and made this up to have [him] put in jail." (*Id.* at 73.) Petitioner stated that Ms. Bennett was "willing to testify to this," and he asked the trial judge if there was "anything [he] can file to get [the judge] to relook at this[.]" (*Id.*)

The state court record also includes service copies of some of Petitioner's early filings in the instant federal habeas case. Among these is Petitioner's "Motion to Court Order Statement from Defense Attorney" (*id.* at 80; Doc. No. 9), in which he seeks a Court Order "for a statement from Mr. Chad Ross[,] defense attorney, on what alleged victim Tarie L. Bennett stated to him," "that she scratched her neck on a rose bush while mowing her yard[,] and was mad at [Petitioner] and wanted him out of the house, and went along with what officers wanted her to say. She also stated she did not think it would lead to jail time, and she did hire Attorney Chad Ross to defend [Petitioner]." (*Id.*)

The petition before this Court was filed on July 18, 2019. (Doc. No. 1.) Petitioner challenges the legality of his conviction on grounds that (1) he is actually innocent of the crime, as demonstrated by the victim now confessing that she had not been truthful in accusing him of assault, and (2) the sheriff's deputies coerced the victim into going along "with what the officers wanted her to say." (*Id.* at 5–6.)

### III. ANALYSIS

Respondent argues that Petitioner did not timely file this habeas action. Petitions under

Section 2254 are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1); *Holland v.*

*Florida*, 560 U.S. 631, 635 (2010). The limitations period runs from the *latest* of:

> (A) the date on which the judgment became final by the conclusion of direct review
> or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action
> in violation of the Constitution or laws of the United States is removed, if the
> applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by
> the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d)(1).

In most cases—including, Respondent argues, the case at bar—the limitations period runs

from the date on which the judgment under review became final. In Tennessee, "a judgment of

conviction upon a guilty plea becomes a final judgment thirty days after entry," so that a defendant

who waives his right to appeal may file a motion to withdraw the previously entered plea if

circumstances warrant. *State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003). Petitioner did not seek

to withdraw his guilty plea, so his conviction became final thirty days after the March 1, 2018

entry of judgment against him. Therefore, Petitioner's conviction became final on March 31, 2018.

Excluding the day that begins the counting of the one-year limitations period, Fed. R. Civ. P.

6(a)(1)(A), Petitioner's statute of limitations, if triggered by the finality of his conviction, would

have expired on March 31, 2019, more than three months before he filed his petition in this Court.

However, in his response to the motion to dismiss, Petitioner argues that "[w]hen a petitioner discovers new evidence"—in this case, "evidence" that Ms. Bennett was coerced into accusing Petitioner of assault but is now willing to testify to Petitioner's innocence of that charge––the filing deadline is one year from the date on which the factual predicate of the habeas claims could have been discovered through due diligence. (Doc. No. 16 at 1 (quoting § 2244(d)(1)(D).) Petitioner asserts that "new information had come to light" sometime in February 2019, when the victim confessed to lying about the incident that led to the scratch on her neck and admitted that "she went along with sheriff's deputies" in accusing Petitioner of assault. (Doc. No. 1 at 3.)

It is unclear to the Court whether, in this scenario, Petitioner could have discovered the factual predicate of his habeas claims prior to February 2019. However, because it is clear that those claims must be rejected as a matter of law, the Court will, as a matter of judicial economy, bypass the issue of their timeliness and adjudicate their merits. *See*, *e.g.*, *Mateo-Castellanos v. Rapelje*, No. 2:11-CV-13761, 2013 WL 1555210, at *2 (E.D. Mich. May 1, 2012) (quoting *Jones v. Bowersox*, 28 F. App'x 610, 611 (8th Cir. 2002)) ("In the present case, because of the complexities involved, it appears to be simply easier and more judicially efficient to adjudicate petitioner's claims on the merits 'than to untangle the complexities of the timeliness issue.'"); *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 429 n.2 (6th Cir. 2006) (citing *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006), for the proposition that, "because neither the statute of limitations nor procedural default constitutes a jurisdictional bar to our review," the court could adjudicate merits of a petition that is probably untimely, "in the interest of judicial economy")).

Petitioner seeks relief based on two claims, the most salient of which is that he is actually innocent of assaulting the victim. This claim of actual innocence (as well as the subsidiary claim

of victim coercion) relies on Petitioner's allegation that the victim has orally recanted her prior statements implicating Petitioner in the crime of assault. However, while a showing of actual innocence may enable review of a separate constitutional claim that has been procedurally defaulted, the Supreme Court has not recognized grounds for habeas relief based on a freestanding claim of actual innocence, where the petitioner asserts his factual innocence of the crime of conviction without claiming a separate constitutional violation during the underlying state criminal proceeding. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Herrera v. Collins*, 506 U.S. 390, 400 (1993) (holding that freestanding "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief," as "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution–not to correct errors of fact").

Here, Petitioner fails to support his claimed innocence with any proof that the victim has recanted under oath, merely asserting that she would do so if the Court arranged for her to testify. Even if he had proffered an affidavit or other statement from Ms. Bennett, Petitioner's substantive claim that he is actually innocent is "seriously undermine[d]" by his guilty plea. *Smith v. Warden*, No. 7:17CV00072, 2018 WL 3130948, at *2 (W.D. Va. June 26, 2018), *appeal dismissed*, 744 F. App'x 181 (4th Cir. 2018). "In *United States v. Broce*, [488 U.S. 563, 570 (1989)] the Supreme Court of the United States held that by pleading guilty, 'the accused is not simply stating that [the accused] did the discrete acts described in the indictment; [the accused] is admitting guilt of a substantive crime.'" *Id.* Thus, even if freestanding claims of actual innocence (as opposed to "gateway" claims of innocence through which the merits of an otherwise procedurally barred claim may potentially be reached) were cognizable on federal habeas review, Petitioner would be hard-

pressed to overcome his guilty plea on the strength of the mere recantation of a domestic-violence victim. *See Mahaffey v. Scutt*, No. 12-CV-13743, 2014 WL 4206947, at \*4 (E.D. Mich. Aug. 25, 2014) (discussing "extreme suspicion" and skepticism with which recantations are viewed in the context of domestic abuse). The Court finds that Petitioner is not entitled to habeas relief on his claim of actual innocence.

As to Petitioner's secondary claim that Ms. Bennett's original story was influenced by "what the officers wanted her to say" (Doc. No. 1 at 6), the Supreme Court has drawn a distinction between coerced statements that are used at trial to convict a criminal defendant, and coerced statements that inform the defendant's decision to plead guilty, as follows:

> We are unimpressed with the argument that . . . the defendant whose confession allegedly caused him to plead guilty . . . is also entitled to a hearing on the voluntariness of his confession and to a trial if his admissions are held to have been coerced. A conviction after trial in which a coerced confession is introduced rests in part on the coerced confession, a constitutionally unacceptable basis for conviction. It is that conviction and the confession on which it rests that the defendant later attacks in collateral proceedings. The defendant who pleads guilty is in a different posture. He is convicted on his counseled admission in open court that he committed the crime charged against him. The prior confession is not the basis for the judgment, has never been offered in evidence at a trial, and may never be offered in evidence.

*McMann v. Richardson*, 397 U.S. 759, 773 (1970). This distinction applies equally to the use of coerced statements of third-party witnesses or victims such as Ms. Bennett, which must have resulted in a fundamentally unfair trial in order to implicate the constitutional rights of the accused. *See Samuel v. Frank*, 525 F.3d 566, 570 (7th Cir. 2008) ("Historically, . . . the concern with coerced statements is a concern with [the damaging effects before the jury of] confessions or other self-incriminating statements, rather than with the coercion itself."); *Nasrichampang v. Woodford*, No. CIV. 04CV2400BTMRBB, 2006 WL 3932924, at \*7 (S.D. Cal. Mar. 3, 2006), *report and recommendation adopted as modified sub nom. Nasrichampang v. Tilton*, No. CIV.

04CV2400BTMRBB, 2007 WL 174103 (S.D. Cal. Jan. 12, 2007), *aff'd sub nom. Nasrichampang v. Woodford*, 288 F. App'x 367 (9th Cir. 2008) ("Promises to 'go easy' on witnesses" or other efforts to leverage their statements "are common practices, which may not be favored, but are not . . . violations of the accused's constitutional rights unless the coerced statements are used to convict him."); *see also United States v. Merkt*, 764 F.2d 266, 274 (5th Cir. 1985) (citing *United States v. Chiavola*, 744 F.2d 1271, 1273 (7th Cir. 1984)) ("To establish that the admission of the [improperly obtained statements of witnesses] violates her own due process rights, Merkt must establish that 'the government's investigation methods resulted in a fundamentally unfair trial.'").

After Petitioner's indictment by the Sumner County grand jury, he was entitled to a trial on the merits of the charge against him, where he could have contested the validity of Ms. Bennett's statement to law enforcement if it had been offered against him. *See Lawn v. United States*, 355 U.S. 339, 349–50 (1958). When he waived that right and pleaded guilty "in order to get out of jail before [he] lost everything" (Doc. No. 13-1 at 73), and then failed to file an appeal contesting his plea, Petitioner also forfeited the ability to claim that his conviction is unconstitutional because (according to Petitioner) it rests on a pre-indictment statement obtained through witness coercion. *See U.S. ex rel. Shepherd v. Welborn*, 848 F. Supp. 1379, 1384 (N.D. Ill. 1994) (citing *United States v. Calandra*, 414 U.S. 338, 345 (1974)) ("A conviction will stand although the state presented the grand jury with evidence that was insufficient, hearsay, or obtained in violation of the Federal Constitution.").

## IV. CONCLUSION

In sum, the claims of the petition are without merit. This action will therefore be dismissed without regard to the timeliness of the petition.

When the district court denies a ground for relief on the merits in a habeas corpus action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Petitioner has not made a substantial showing of the denial of a constitutional right with respect to any ground for relief asserted in the petition, a COA will not issue.

An appropriate Order will enter.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE